## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          **MEMORANDUM OF LAW & ORDER**
                                         Criminal File No. 20-83 (MJD/DTS)

(1) JAVIER SILVA-FIGUERO,

        Defendant.

Allen A. Slaughter, Jr., Assistant United States Attorney, Counsel for Plaintiff.

Andrew S. Garvis, Koch & Garvis, Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on Defendant's Motion for Review of the Pretrial Release Order and to Release the Defendant Conditionally.  [Docket No. 91]

## II.     BACKGROUND

### A.      Factual Background

Overall, the Government asserts that, between at least approximately November 2017 and January 2020, Defendant Javier Silva-Figuero first directly distributed and later arranged for the distribution of methamphetamine – the

1

latter method by way of sending a courier intermediary.  (April 15, 2020, Criminal Complaint Affidavit [Docket No. 1-1] ("Aff.") ¶ 5; Tr. 12-13 (testimony of FBI Special Agent Jessica Stultz); Indictment [Docket No. 1].)  Defendant dealt in multiple pound loads over this period of time.  (Tr. 13.)

On January 16, 2019, law enforcement identified Defendant's travel plans as suspicious, because he had booked a "last minute" and "one-way" ticket from the Twin Cities to Phoenix, Arizona.  (Tr. 11.)  During a consensual encounter with Defendant at the Minneapolis/St. Paul International Airport, agents found approximately $17,000 in Defendant's carry-on bag.  (Id.)  Law enforcement also located additional cash in Defendant's checked luggage, for a total of $95,000 in cash.  (Id.)  At that time, Defendant failed to provide a legitimate explanation for the amount of cash in his possession.  (Id. 11-12.)  The seized cash became the subject of a civil forfeiture proceeding.  See United States v. $95,895.00 in U.S. Currency, Civil File No. 19-1686 (MJD/ECW).

By November 1, 2019, Minnesota law enforcement agents had conducted a controlled purchase of methamphetamine.  The person who delivered the methamphetamine was arrested and admitted that Defendant was that person's primary source of supply that day.  (Aff. ¶¶ 4-6; Tr. 12.)  This person stated that

2

they had known Defendant for 5 years, they had received multi-pound loads of
methamphetamine on a regular basis from Defendant for approximately 3-4
years – first directly from Defendant and then, after Defendant moved to Mexico,
from couriers directed by Defendant.  This person became an informant and
cooperating defendant ("CD").  (Aff. ¶¶ 4-6; Tr. 12-13.)

By November 12, 2019, after Defendant communicated with CD through
several recorded calls and text messages, Defendant agreed to send a courier to
provide CD with approximately two pounds of methamphetamine.  (Aff. ¶ 7; Tr.
13-14.)  Defendant directed law enforcement (through CD) to a Walgreen's
parking lot on Chicago Avenue South, in Minneapolis.  (Aff. ¶ 7; Tr. 14-15.)  The
courier who delivered the methamphetamine to CD was later identified by law
enforcement as co-Defendant Manuel Campos-Cruz, who is charged in the
instant indictment as well as in a separate methamphetamine conspiracy that
ended in December 2019.  (Tr. 14.)  See also United States v. Campos-Cruz, Crim.
No. 20-83(2)(MJD/DTS); United States v. Campos-Cruz, Crim. No. 20-
15(1)(MJD/DTS).

After November 12, 2019, law enforcement continued to obtain voice and
text communications between Defendant and CD, as well as communications

3

from Defendant's known Facebook account to CD, which indicated Defendant's continued willingness to distribute methamphetamine to CD with comments such as "you ready?" to ask if CD had cash available to purchase quantities of methamphetamine.  (Aff. ¶¶ 11-15; Tr. 15-16.)

By January 8, 2020, multiple recorded communications show that Defendant again agreed to distribute methamphetamine to CD.  (Aff. ¶ 8; Tr. 15.) On January 8, Defendant directed CD to an Applebee's Restaurant in Maple Grove, Minnesota. (Aff. ¶ 8; Tr. 15-16.)  The courier was delayed, so CD called Defendant, who answered to the name "Javier."  (Id.)  Campos-Cruz arrived and delivered approximately four pounds of methamphetamine to CD, and law enforcement arrested Campos-Cruz.  (Aff. ¶ 8; Tr. 15-16.)

A  criminal complaint and warrant for Defendant issued on April 15, 2020. United States v. Silva-Figuero, 20-mj-260 (BRT) [Docket No. 1].  Defendant was arrested while crossing the United States-Mexico border into Arizona on or about April 18, 2020. (Rule 5 Documents at 1 [Docket No. 5].)  While Defendant was being arrested, he passed his phone to a female companion, and law enforcement was not able to recover it.  (Tr. 26.)

Defendant was initially interviewed by the District of Arizona Pretrial Services Office.  (See Original April 22, 2020, Bond Report by U.S. Pretrial Services Officer Jose Valencia [Docket No. 6].)  Defendant told Pretrial Services that his address for the last month was in Mexico, in a home owned by his common law wife, which they share with their three minor children.  (Id.) Defendant stated that his common law wife and children are Mexican citizens, as are his parents, who also reside in Mexico.  (Id.)  Before Defendant moved to Nogales, he lived in Phoenix, Arizona for two years.  (Id.)  Before that, he lived in Maple Grove, Minnesota, for two years and also in Portland, Oregon, and El Paso, Texas.  (Id.)  Defendant reported that he grew up in Guadalajara, Mexico, and has a valid U.S. passport.  (Id.)  He also reported that he was self-employed and working in Phoenix, Arizona.  (Id.)

Defendant's brother has lived in Osseo, Minnesota, since 2016.  His brother verified that Defendant lived with him in Minnesota on an "irregular basis" since 2017.  (Pretrial Services Report (Addendum 9/8/2020) [Docket No. 97].)

Law enforcement investigation shows that Defendant crossed from Nogales, Mexico, into the United States approximately 13 times in 2019.  (Aff. ¶

9.)  Between January and April 2020, he entered the United States from Mexico at least 5 times.  (Id.)

**B.   Procedural History**

On April 15, 2020, Defendant was charged in this Court by way of a criminal Complaint alleging he conspired to distribute methamphetamine. United States v. Javier Silva-Figuero, 20-mj-260 (BRT) [Docket No 1].  On approximately April 18, 2020, he was arrested while crossing from Mexico into Arizona.

On May 14, 2020, an Indictment was filed charging Defendant with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 846.  The statutory mandatory minimum sentence, if convicted, is 10 years, and the statutory maximum sentence is life in prison.  21 U.S.C. § 841(b)(1)(A).

On September 11, 2020, a detention hearing was held before Magistrate Judge Leung.  (Tr. 3-6.)  Magistrate Judge Leung ordered Defendant detained on the grounds that Defendant was both a flight risk and a danger to the community.  (Id. 42-43.)  [Docket No. 90]

Defendant has now filed a motion to review the detention order and for release.

III.   **DISCUSSION**

A.      **Standard for Review of Release Order**

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a

magistrate judge, . . . the person may file, with the court having original

jurisdiction over the offense, a motion for revocation or amendment of the

order," and the Court shall decide the motion "promptly."  This Court must

conduct a de novo review of the record and of the Magistrate Judge's detention

order.  18 U.S.C. § 3145(b); United States v. Maull, 773 F.2d 1479, 1481 (8th Cir.

1985) (en banc).  "When making its de novo review, the district court may rely on

the record of the proceedings before the magistrate judge and may also accept

additional evidence."  United States v. Marra, 165 F. Supp. 2d 478, 481

(W.D.N.Y.2001), aff'd 21 F. App'x 66 (2d Cir. 2001).  The Court has conducted a

de novo review of the record, including the transcript of the hearing [Docket No.

96] and the exhibits submitted during that hearing.

Under 18 U.S.C. § 3142(e), a defendant may be detained before trial "[o]nly

if the government shows by clear and convincing evidence that no release

condition or set of conditions will reasonably assure the safety of the community

and by a preponderance of the evidence that no condition or set of conditions . . .

will <u>reasonably assure</u> the defendant's appearance."  <u>United States v. Abad</u>, 350

F.3d 793, 797 (8th Cir. 2003) (citations omitted).

> Subject to rebuttal by the person, it shall be presumed that no
> condition or combination of conditions will reasonably assure the
> appearance of the person as required and the safety of the
> community if the judicial officer finds that there is probable cause to
> believe that the person committed . . . an offense for which a
> maximum term of imprisonment of ten years or more is prescribed
> in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .

18 U.S.C. § 3142(e)(3)(A).  Defendant was indicted for violation of 21 U.S.C. §

841(b)(1)(A), which provides that "such person shall be sentenced to a term of

imprisonment which may not be less than 10 years or more than life."

> In determining if release conditions exist that will reasonably assure
> the appearance of a defendant at trial and the safety of the
> community, the court considers the following: (1) the nature and
> circumstances of the crime; (2) the weight of the evidence against the
> defendant; (3) the history and characteristics of the defendant,
> including mental condition, family ties, employment, community
> ties, and past conduct; and (4) the seriousness of the danger to the
> community or to an individual.

<u>Abad</u>, 350 F.3d at 797 (citing 18 U.S.C. § 3142(g)).

In a presumption case, "a defendant bears a limited burden of production

– not a burden of persuasion – to rebut that presumption by coming forward

with evidence he does not pose a danger to the community or a risk of flight."

<u>Id.</u> (citation omitted).  If he meets his burden of production as to both factors, the

presumption in favor of detention is not eliminated, but remains one factor to be

weighed by the Court.  Id.

**B.      Existence of Probable Cause**

Defendant does not dispute the existence of probable cause, and the Court

finds that probable cause has been established and that the presumption in favor

of detention applies.

**C.      Whether a Condition or Combination of Conditions Will
          Reasonably Assure the Appearance of Defendant and the Safety of
          the Community**

The Court concludes that there are no conditions or combination of

conditions that would reasonably assure the appearance of Defendant or the

safety of the community if he is released.

**1.      Nature and Circumstances of the Offense**

Defendant is charged with a serious drug trafficking crime, for which

Congress has set a mandatory minimum sentence of 10 years and a maximum of

life in prison.  The evidence in the current record indicates that Defendant first

distributed and then coordinated the large-scale distribution of

methamphetamine in Minnesota.  Several pounds of methamphetamine were

recovered in controlled buys in November 2019 and January 2020.

2.      **Weight of the Evidence**

The weight of the evidence against Defendant is substantial.  Defendant was stopped at the airport with a large amount of cash after booking a one-way ticket to the source city of Phoenix and could provide no reasonable explanation at that time.

Defendant asserts that the money seized at the airport was legitimate cash he earned working in construction for various employers in various states.  (Def. Ex. 2.)  Defendant notes that he claimed the money seized from him at the airport on his state and federal tax returns.  (Def. Exs. 3-4.)  Defendant's 2017 and 2018 tax returns were both prepared on July 31, 2019 by a tax preparer in Minneapolis – one month after the civil complaint was filed against the cash seized from Defendant at the airport.  At that time, Defendant did not know that he was the subject of a separate, ongoing criminal investigation.  The timing of the preparation of the tax returns is highly suspicious.  It also strains credulity that Defendant saved more than 80% of his total income from the previous two years and intended to transport that amount in cash, mostly in checked luggage, on a flight from Minnesota to Arizona.

The Government also has sufficient evidence of Defendant's identity based on identification by CD, who has known Defendant for years, and through

comparison of Defendant's driver's license photograph, and photographs from

his Facebook account. (Tr. 15-16.)

### 3. Defendant's History and Characteristics

Defendant is a U.S. citizen with no criminal history, which weighs against

detention. However, apart from Defendant's brother, Defendant's familial

connections are in Mexico – his home, his common law wife, his children, and his

parents are all in Mexico. Defendant has lived a relatively mobile existence,

moving throughout the United States and Mexico and is self-employed.

Defendant possesses a U.S. passport and travels frequently between Mexico and

the United States.

Defendant's argument that he voluntarily appeared at the in rem

proceeding on January 30, 2020, carries little weight because, at that time,

Defendant had not been criminally charged. Defendant did not know that he

was identified with the failed drug deal by law enforcement. The Facebook

account, which contained pictures of Defendant, unfriended CD shortly after the

failed transaction, and Defendant began using a different Facebook account.

(Aff. ¶¶ 14-15.) Defendant's indictment significantly raised the consequences

from the time of the civil proceeding. He now faces a significant sentence and

has a strong motive that he did not have on January 30, 2020, to flee, harm

witnesses, and otherwise obstruct justice.

### 4.    Danger to the Community

Defendant points out that he has no criminal history and, thus, no history

of crimes of violence or using a firearm.  This fact weighs against detention.

On the other hand, one or more of Defendant's co-conspirators has actively

cooperated with law enforcement with regard to this conspiracy investigation.

Cooperation has included efforts to confirm Defendant's identity and gather

evidence directly against him.  Defendant's release poses a threat to cooperating

co-conspirators.  Additionally, the Government represents that Defendant's case

is only a small part of a larger ongoing drug conspiracy investigation.  Defendant

is charged with a serious drug trafficking crime.  His demonstrated ability to

facilitate drug distribution through indirect means indicates that he could

interfere with the ongoing investigation or continue his drug trafficking if he

were released to a halfway house or home detention.

### 5.    Conclusion

The Court denies Defendant's motion and affirms the Magistrate Judge's

detention order.  Under any set of conditions, Defendant remains a significant

flight risk.  Defendant is charged with a serious drug trafficking crime, for which he faces a ten-year mandatory minimum sentence, a strong incentive to flee, and a presumption of detention.  He has minimal ties to Minnesota and strong ties to Mexico, where he resides with his common law wife and three children and where both of his parents live.  Defendant is very mobile: he is self-employed, has moved from state to state and now to Mexico, and frequently crosses the border between the United States and Mexico.  Moreover, there is strong evidence that he is willing to fabricate documents and lie to the Court, given the creation of two years' tax returns on the same day one month after the seizure of Defendant's cash in an attempt to convince the Court to return Defendant's money.  Even without the statutory presumption, the Government has shown, by a preponderance of the evidence, that no set of conditions would reasonably assure Defendant's appearance.

Additionally, given the seriousness of the charged crime, the ongoing investigation, and the safety of CD and possibly other cooperators, Defendant has failed to produce evidence sufficient to rebut the presumption with regard to the safety of the community.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1.     Defendant's Motion for Review of the Pretrial Release Order
       and to Release the Defendant Conditionally [Docket No. 91] is
       **DENIED**.

2.     The Order for Detention [Docket No. 90] is **AFFIRMED**.

Dated:   October 19, 2020                    s/ Michael J. Davis
                                             Michael J. Davis
                                             United States District Court

14